#29851-r-SRJ
**2024 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

EMILY BIALOTA,                                      Plaintiff and Appellant,

      v.

LAKOTA LAKES, LLC, a Minnesota
limited liability company, PETER J.
TAUNTON, KRISTIN J. TAUNTON, and
all persons unknown, claiming any
legal or equitable right, title, estate,
lien, or interest in the property described
in the complaint adverse to plaintiff's title
or a cloud on plaintiff's title thereto,                Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Retired Judge

* * * *

BRIAN L. UTZMAN of
Smoot & Utzman, P.C.
Rapid City, South Dakota                           Attorneys for appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 30, 2022
REASSIGNED JULY 31, 2023
OPINION FILED **10/25/2023**
REHEARING GRANTED AND
OPINION WITHDRAWN
FEBRUARY 7, 2024
OPINION FILED **02/07/2024**

\* \* \* \*

NATHAN R. CHICOINE of
DeMersseman, Jensen,
   Tellinghuisen & Huffman, LLP
Rapid City, South Dakota                  Attorneys for appellees.

#29851

JENSEN, Chief Justice (on reassignment).

[¶1.] Emily Bialota began an action to quiet title in Pennington County, claiming fee simple ownership in certain real property previously owned by Lakota Lakes but sold at a tax sale. Lakota Lakes moved for summary judgment, arguing that it had not been validly served with the notice of intent to take tax deed, rendering the tax deed void. Bialota cross-motioned for summary judgment, arguing that she had served Lakota Lakes and that Pennington County had properly issued a tax deed based upon her affidavit of completed service. The circuit court granted Lakota Lakes' motion for summary judgment and denied Bialota's motion. Bialota appeals, arguing she properly served Lakota Lakes. We reverse and remand.

## Factual and Procedural History

[¶2.] This appeal concerns vacant real property in Pennington County, South Dakota, in the Lakota Lake Encampment Subdivision. On May 27, 2008, Peter and Kristin Taunton purchased the property for the purpose of future development. Subsequently, they formed Lakota Lakes, LLC, in Minnesota with the aid of a Minnesota attorney. The Tauntons contributed the property to Lakota Lakes by quit claim deed on June 4, 2009. Lakota Lakes failed to pay the property taxes owed for tax year 2015. Pennington County offered the property for tax sale in December 2016, and when no bid was received at the sale the property was "struck off" the rolls and sold to Pennington County for $18,480.01, which was the amount due for the nonpayment of taxes, penalties, interest, and costs for 2015.

-1-

[¶3.]        Pennington County attempted correspondence with Lakota Lakes on three occasions: first, by sending a letter of intent to seek tax deed on May 15, 2019; second, by letter indicating it was initiating a tax deed action on November 25, 2019; and third, by letter giving notice of intent to take tax deed on December 19, 2019. The December 19 notice of intent was sent to an address in Chaska, Minnesota, and returned as undelivered mail. Throughout this time, Lakota Lakes failed to make any effort to pay the property taxes or update its mailing address.

[¶4.]        Bialota purchased the tax certificate from Pennington County for the outstanding tax debt, and the County assigned the tax certificate to her on October 27, 2020. Once again, Pennington County attempted to send Lakota Lakes notice of the tax sale at the Chaska address, and it was returned as undelivered. Bialota also paid Pennington County the additional unpaid property taxes owed through 2020. An ownership and encumbrance report Pennington County ordered showed no mortgages, liens, or judgments recorded against the property.

[¶5.]        After Bialota purchased the tax certificate, her husband, James, researched how to serve Lakota Lakes with the notice of intent to take tax deed (Notice). He contacted the Office of the South Dakota Secretary of State and was informed that because Lakota Lakes was not transacting business in South Dakota, did not have a presence in South Dakota, and was not a registered entity in South Dakota, the Notice would need to be served upon Lakota Lakes in Minnesota.

[¶6.]        James then contacted the Minnesota Secretary of State, which provided the address of a suite in Eden Prairie, Minnesota, listed in Lakota Lakes'

corporate filings as its business address. It also informed James that Lakota Lakes had been administratively terminated on August 3, 2012.

[¶7.]       James attempted to serve the Notice upon Lakota Lakes at its business address in Eden Prairie. He learned that the property was listed for lease, contacted the listing agent, and discovered that the suite was vacant and had been so for about a year. James also attempted to serve the Notice upon Lakota Lakes at the Chaska address that the Tauntons provided in the quit claim deed that contributed the property to Lakota Lakes. He contacted the Carver County Recorder's Office to determine if the Tauntons owned any property in Carver County and was instructed on how to conduct an ownership search online. After doing so, James learned that the Tauntons no longer owned the property at the address in the quit claim deed.

[¶8.]       Unable to locate Lakota Lakes at its business address, or anyone associated with Lakota Lakes elsewhere, James prepared an "affidavit of not found" stating there was an attempt to serve the business at the registered office address and the address was vacant and had been for about a year. James delivered the affidavit and Notice to the Minnesota Secretary of State, which was Lakota Lakes' registered agent. The affidavit contained a notation that a check for the filing fee was enclosed and included a request to "[p]lease return Service of Process to Emily Bialota" at the address provided. After receiving the affidavit and Notice, the

#29851

Minnesota Secretary of State issued a "Service of Process Acknowledgment" on November 5, 2020, for Bialota, as plaintiff, and Lakota Lakes, as defendant.[1]

[¶9.]      Upon receipt of the service of process acknowledgment, Bialota filed an affidavit of completed service with the Pennington County Treasurer on November 9, 2020. In the affidavit, Bialota recited that she was the legal owner and holder of the tax sale certificate she purchased in 2016 for delinquent real estate taxes owed on the subject real property. The affidavit included the acknowledgment of service from the Minnesota Secretary of State and recited that "service of the [Notice], a copy of which is attached and incorporated herein by this reference, was made upon The Registered Agent of the Business (State of Minnesota SOS) at 60 Empire Dr. #100 Saint Paul MN 55103) (See attached Certificate of Service) was made on November 5th, 2020[.]" Lakota Lakes failed to redeem the property within sixty days after the affidavit of completed service was filed with the Pennington County Treasurer. Pennington County issued a tax deed to Bialota on January 11, 2021.

[¶10.]      Peter Taunton claims to have first learned of the tax deed in January 2021 through his real estate agent who had been marketing the property since 2019. Taunton contacted Bialota and sought to repurchase the property from her by reimbursing the taxes she had paid on the property. She refused the offer and

---

1.      The Service of Process Acknowledgment lists the names of the parties; a file number; a date filed and a date the Secretary of State mailed the Notice to Lakota Lakes, both November 5, 2020; and a certified mail number for the letter sent to Lakota Lakes. Contrary to the assertion by the dissent that the acknowledgment of service is not central to Bialota's claim of personal service, she specifically relied on the acknowledgment to support her claim of personal service in an affidavit of completed service filed with the Pennington County Treasurer and argues in her brief that she personally served the Minnesota Secretary of State.

-4-

brought a quiet title action on February 15, 2021. Lakota Lakes filed reinstatement paperwork with the Minnesota Secretary of State on March 9, 2021. On March 26, 2021, it filed an application for certificate of authority to do business with the South Dakota Secretary of State, providing a principal office address in Excelsior, Minnesota, and a mailing address in Miami, Florida.

[¶11.] Lakota Lakes answered and counterclaimed for a declaratory judgment that the tax deed was void for failure to personally serve Lakota Lakes with the Notice and for cancellation of the deed. It subsequently moved for summary judgment, arguing that there were no genuine issues of material fact in dispute because Bialota did not personally serve Lakota Lakes with the Notice as required by South Dakota law. Lakota Lakes argued that the tax deed was void as a matter of law.

[¶12.] Bialota filed a cross-motion for summary judgment, arguing that service upon Lakota Lakes was proper because at the time of the Notice, Lakota Lakes was administratively terminated, and thus, by operation of law, "[t]he Minnesota Secretary of State [was] Lakota Lakes['] agent[.]" She contended that she was entitled to summary judgment quieting title to the property, as she had complied with the requirements for procuring a tax deed and Lakota Lakes had failed to redeem the tax certificate within sixty days from the date of filing of the affidavit of completed service of the Notice, as required by SDCL 10-25-8.1.

[¶13.] The court denied Bialota's motion for summary judgment and granted Lakota Lakes' motion for summary judgment. The court proceeded with an analysis under South Dakota law without addressing the applicability of Minnesota law,

determining that service upon Lakota Lakes, a business entity, was governed by SDCL 15-6-4(d)(1), allowing personal service "on the president, partner or other head of the entity, officer, director, or registered agent thereof" or if none of those could be conveniently found, "by leaving a copy of the summons and complaint at any office of such business entity within this state, with the person in charge of such office[.]" It determined that personal service was not effectuated, nor was there evidence of substantial compliance with personal service requirements. Additionally, the court found that Bialota did not seek permission to serve process by publication. Accordingly, the circuit court concluded that because the Notice was not given to Lakota Lakes, the tax deed was void.

[¶14.] Bialota appeals the circuit court's grant of summary judgment to Lakota Lakes, raising two issues which we restate as follows:

1. Whether South Dakota or Minnesota law governing service of process applies.

2. Whether service of the notice of intent to take tax deed was proper.

**Standard of Review**

[¶15.] "We review grants of summary judgment under the de novo standard of review." *State v. BP plc*, 2020 S.D. 47, ¶ 18, 948 N.W.2d 45, 52. "[W]e decide whether genuine issues of material fact exist and whether the law was correctly applied." *Id.* (alteration in original) (quoting *Heitmann v. Am. Fam. Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 509). "[B]ecause the issue of the validity of service of process is a question of law, 'we review the trial court's decision de novo, with no deference given to the trial court's legal conclusions.'" *Lekanidis v.*

*Bendetti*, 2000 S.D. 86, ¶ 15, 613 N.W.2d 542, 545 (quoting *Yankton Ethanol, Inc. v. Vironment, Inc.*, 1999 S.D. 42, ¶ 6, 592 N.W.2d 596, 598).

## Analysis and Decision

### 1.  *Whether South Dakota or Minnesota law governing service of process applies.*

[¶16.]     "[T]he law of the forum is generally applied when the issues presented involve matters of procedure."  *Northland Cap. Fin. Servs., LLC v. Robinson*, 2022 S.D. 32, ¶ 13, 976 N.W.2d 252, 256.  "[A] court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case."  *Id.* (quoting Restatement (Second) of Conflict of Laws § 122 (Am. L. Inst. 1971)).  "The local law of the forum determines the method of serving process and of giving notice of the proceeding to the defendant."  Restatement (Second) of Conflict of Laws § 126 (Am. L. Inst. 1971).

[¶17.]     However, courts addressing service of process on foreign corporations through the foreign state's secretary of state have generally held that service on a defendant must be made in a manner consistent with the law of the forum (here, South Dakota), while the substantive law of the foreign state (here, Minnesota) is applied in determining whether the secretary of state was a valid agent for service of process.  *See Isis Litig., L.L.C. v. Svensk Filmindustri*, 170 P.3d 742, 748–49 (Colo. App. 2007); *Breer v. Sears, Roebuck & Co.*, 709 N.Y.S.2d 798, 803 (N.Y. Sup. Ct. 2000); *Bell v. Am. Int'l Indus.*, No. 1:17CV111, 2020 WL 654632, at *5 (M.D.N.C. Nov. 6, 2020); *Deutsche Bank Tr. Co. Ams. v. Tradewinds Airlines, Inc.*, No. 03 CVS 12215, 2009 WL 1154861, at *6 (Super. Ct. of N.C. Apr. 29, 2009).  Thus, we

examine whether the Minnesota Secretary of State was qualified as an agent to receive service for Lakota Lakes under Minnesota law and whether Bialota's service on the Minnesota Secretary of State was proper under South Dakota law.

### 2. *Whether service of the notice of intent to take tax deed was proper.*

[¶18.] In proceedings concerning tax deeds, SDCL 10-25-3 specifies which parties must be served with the notice of intent to take tax deed. Lakota Lakes, as "owner of record of the real property" was entitled to service of the Notice. *See* SDCL 10-25-3. SDCL 10-25-5 provides that "[p]ersonal service of the notice shall be served on the owner of record of the real property . . . in the manner provided by law for the service of summons."

[¶19.] Undoubtedly, the Minnesota Secretary of State was qualified as a registered agent for personal service of the Notice upon Lakota Lakes. Under Minn. Stat. Ann. § 5.25(5)(c), the Minnesota Secretary of State may serve as an agent for service of process "[i]f a business entity has been involuntarily dissolved or its authority to transact business in this state has been revoked[.]" Minnesota law also provides:

> If a limited liability company or foreign limited liability company does not appoint or maintain an agent for service of process in this state or the agent for service of process cannot with reasonable diligence be found at the agent's street address, the secretary of state is an agent of the company upon whom process, notice, or demand may be served.

Minn. Stat. Ann. § 322C.0116(2).

[¶20.] The record demonstrates that Lakota Lakes could not be found for service of process with reasonable diligence. Additionally, Lakota Lakes had been

administratively terminated and failed to maintain a registered agent for service of process at the time Bialota sought to serve the Notice. Therefore, under both Minn. Stat. Ann. § 5.25(5)(c) and either condition within Minn. Stat. Ann. § 322C.0116(2), the Minnesota Secretary of State was indeed an agent of Lakota Lakes.

[¶21.] The record also demonstrates that Bialota personally served the Notice on the Minnesota Secretary of State, as required by SDCL 10-25-5 "in the manner provided by law for the service of summons." This fact is true whether we apply the service of process rules under South Dakota or Minnesota law. There is no dispute that Bialota complied with Minn. Stat. Ann. § 5.25(3)[2] to effectuate personal service on the Minnesota Secretary of State under Minnesota law. For the reasons set forth herein, personal service was also accomplished under South Dakota law.

[¶22.] South Dakota's rules for personal service of a summons are set forth in SDCL 15-6-4(d). The Rule provides that a "summons shall be served by delivering a copy thereof. Service in the following manner *shall constitute personal service*: (1) If the action is against a business entity, on the president, partner or other head of the entity, officer, director, *or registered agent thereof*." SDCL 15-6-4(d) (emphasis added). Delivering a copy of the summons to the registered agent of a business entity is personal service on the business entity under SDCL 15-6-4(d)(1).[3]

---

2.      Minn. Stat. Ann. § 5.25(3) provides that "[w]hen service of process is to be made on the secretary of state . . . [s]ervice must be made by filing with the secretary of state one copy of the process, notice, or demand along with payment of a $35 fee."

3.      Further, service on the Minnesota Secretary of State, as agent for Lakota Lakes, was permitted under the long-arm jurisdiction statute based upon Lakota Lakes' ownership of property within South Dakota. *See* SDCL 15-7-

(continued . . .)

#29851

[¶23.] The Notice was delivered[4] to the Minnesota Secretary of State, and the Minnesota Secretary of State acknowledged service of the same on November 5, 2020, by issuing a clearly denominated, written "Acknowledgment of Service of Process[.]" This document appears in the record, and establishes both the fact of service and proof of service. SDCL 15-6-4(g) provides that proof of personal service "must state the time, place, and manner of such service" and is made by, among other methods, "[t]he written admission of the party or his representative upon whom service might have been made for such party[.]"[5] The language for "admitted" proof of service under SDCL 15-6-4(g)(3) is clear and specific. The

_____

(. . . continued)

2(3). SDCL 15-7-3 provides, "[s]ervice of process upon the persons subject to § 15-7-2 may be made by service outside this state in the same manner provided for service within this state with the same force and effect as though service had been made within this state." *See also* SDCL 15-6-4(f) ("Whenever a statute of this state provides for the service of a legal process upon a party not a resident of or found within the state, service shall be made under the circumstances and in the manner prescribed by the statute.").

4. SDCL 15-6-4(d) does not define the method of delivery required to accomplish service. In fact, the service rules contemplate that delivery may take place by mail when there is an acceptance of service. *See* SDCL 15-6-4(j).

5. Although the acknowledgment of service does not state the manner of service on the Minnesota Secretary of State, Lakota Lakes does not challenge the adequacy of the proof or discuss the significance of the acknowledgment. This is despite Bialota's reliance on the acknowledgment by the Minnesota Secretary of State in her affidavit of completed service of the Notice filed in the Pennington County Treasurer's Office on November 9, 2022. Moreover, Lakota Lakes acknowledges that "[p]ersonal service may be deemed effective if there is substantial compliance with the requirements of the service statute" and that substantial compliance "depends on the facts of each particular case." *See Wagner v. Truesdell*, 1998 S.D. 9, ¶¶ 6–7, 574 N.W.2d 627, 629. The fact that the method of service is not stated in the acknowledgment is insignificant given the fact that the Minnesota Secretary of State acknowledged receipt and service on November 5.

-10-

"written admission of the party or his representative upon whom service might have been made for such party" is sufficient proof that service was completed under our rules. Once a party has admitted the document was delivered and received, the fact of service and proof of that service have been accomplished under South Dakota law.[6] This reading of SDCL 15-6-4 is also consistent with "[t]he general rule that such 'an acknowledgment or acceptance of service is the full equivalent of actual personal service . . . .'" *Priester v. Priester*, 127 S.E. 18, 19 (S.C. 1925); *see also* 72 C.J.S. *Process* § 68 (2023) ("An acknowledgment of service of process by an attorney or agent expressly authorized to make such acknowledgment is sufficient."); *Rudd v. Merritt*, 66 P.3d 230, 236 (Idaho 2003) (written admission completes service of process).

[¶24.]     Once Bialota filed an affidavit indicating that personal service of the Notice was accomplished on the Minnesota Secretary of State, Lakota Lakes had sixty days to redeem the property. *See* SDCL 10-25-8.1; *see also* SDCL 10-25-8 (providing that filing the affidavit of service completes service of the notice, that the "affidavit is presumptive evidence of the completed service of the notice[,]" and that

---

6.     The dissent notes the distinction between personal and substituted service and contends that Bialota failed to effect personal service as prescribed by SDCL 10-25-3. But this view overlooks the nature of substituted service and the significance of the Minnesota Secretary of State's acknowledgment of Bialota's service. Substituted service is complete upon "leaving a copy at the defendant's dwelling with someone over the age of fourteen years who resides there[,]" without regard to any acknowledgment. SDCL 15-6-4(e). Here, however, the Minnesota Secretary of State's acknowledgment is central to the analysis. Regardless of whether Bialota should have attempted to deliver the Notice by mail as a means of personal service, the Minnesota Secretary of State *acknowledged* that the Notice was, in fact, delivered. As such, personal service was accomplished.

the right of redemption expires sixty days after the affidavit is filed). Lakota Lakes failed to redeem the property during this window, and Bialota was entitled to the tax deed to the property.

[¶25.]     We reverse and remand with directions for further proceedings consistent with this opinion.

[¶26.]     SALTER and MYREN, Justices, concur.

[¶27.]     KERN and DEVANEY, Justices, concur in part and dissent in part.


KERN, Justice (concurring in part and dissenting in part).

[¶28.]     I agree with the majority opinion that the law of Minnesota controls whether the Minnesota Secretary of State was Lakota Lakes' agent to receive service of process and that under Minnesota law the Minnesota Secretary of State was properly served as Lakota Lakes' registered agent for service of process in this matter. I also agree that South Dakota law controls our determination whether Bialota personally served the Minnesota Secretary of State as Lakota Lakes' registered agent.[7] However, I disagree with the majority opinion's determination that Bialota accomplished valid service on the Minnesota Secretary of State. Therefore, I respectfully dissent.

---

7.    The majority opinion also concludes that the requirements of Minnesota law regarding service of process on the Minnesota Secretary of State were complied with and thus service was proper. But service of the notice of intent to take tax deed is governed by South Dakota law—as the majority opinion specifically holds—thus I offer no opinion as to propriety of the service under Minnesota law.

[¶29.] As the majority opinion states, SDCL 10-25-3 sets forth which parties must be served with the notice of intent to take a tax deed. When, as here, the party (Lakota Lakes) is the owner of the real property, SDCL 10-25-5 requires "[*p*]*ersonal service* of the notice . . . in the manner provided by law for the service of summons." (Emphasis added.) The statute governing *personal service* provides that "[t]he summons shall be served by *delivering* a copy thereof." SDCL 15-6-4(d) (emphasis added). To personally serve a business entity, such as Lakota Lakes, Biolata was required to *deliver* a copy of the summons "on the president, partner or other head of the entity, officer, director, or registered agent thereof." SDCL 15-6-4(d)(1).

[¶30.] Contrary to the majority opinion's suggestion otherwise, Bialota has not established that she *personally* served the Minnesota Secretary of State by *delivering* a copy of the Notice to that office as required by SDCL 15-6-4(d)(1). In fact, Biolata's affidavit contains nothing other than a conclusory statement that "service of the Notice . . . was made upon The Registered Agent . . . ." Moreover, the majority opinion incorrectly states that Bialota argues on appeal that she accomplished personal service on the Minnesota Secretary of State. In fact, according to Bialota, "Lakota Lakes was the *only* person or entity that had to be served personally with a copy of the [notice], dated October 27, 2020." (Emphasis added.) And to support her sole argument that she "accomplished valid personal service" on *Lakota Lakes*, Bialota relies on her view that she effected "*substitute*

service upon the Minnesota Secretary of State."[8]  (Emphasis added.)  This argument

fails because Bialota identifies no South Dakota law that allows for substituted

service under these circumstances.

[¶31.]      Importantly, in addition to never making the argument that she

personally served the Minnesota Secretary of State, Bialota also does not argue to

this Court that she complied with the personal service requirements in SDCL 15-6-

4(d)(1) (requiring delivery of the Notice to the Minnesota Secretary of State).  She

actually claims the statute does not apply under the circumstances.[9]  Nor does she

argue that the "Minnesota Secretary of State's acknowledgement is central to the

analysis."  *See* Majority Opinion ¶ 24 n.6.  Yet Bialota, as "the party on whose

---

8.     Biolata cites several provisions that refer to service upon the South Dakota
       Secretary of State.  *See* SDCL 47-1A-1531.1 (providing that "[t]he Office of
       the Secretary of State's revocation of a foreign corporation's certificate of
       authority appoints the Office of the Secretary of State the foreign
       corporation's agent for service of process"); SDCL 47-34A-1008(d) (providing
       that "[i]f a foreign limited liability company transacts business in this state
       without a certificate of authority or cancels its certificate of authority, it
       appoints the secretary of state as its agent for service of process for rights of
       actions arising out of the transaction of business in this state"); SDCL 47-
       14B-19 (providing that "[a]ny foreign business trust which does business in
       the state without having registered under this chapter shall be deemed to
       have thereby appointed and constituted the secretary of state its agent for
       the acceptance of legal process").  While these provisions refer to the South
       Dakota Secretary of State's status as an agent for service of process under
       certain circumstances, they do not displace the requirement of personal
       service on the record owner of property—or the record owner's registered
       agent—under SDCL 10-25-5.  Thus, substituted service does not apply here.

9.     Bialota does not assert that Lakota Lakes was served under SDCL 15-6-4(e),
       which provides that personal service is also effectuated "by leaving a copy at
       the defendant's dwelling with someone over the age of fourteen years who
       resides there" when a "defendant cannot be found conveniently."  She also
       does not assert that Lakota Lakes was served under SDCL 15-9-7, which
       provides service may be made by publication when the defendant is not found
       in state under certain conditions.

behalf service has been made has the burden of establishing its validity." *Grajczyk v. Tasca*, 2006 S.D. 55, ¶ 22, 717 N.W.2d 624, 631. Nevertheless, the majority opinion concludes that Bialota accomplished valid service of the Notice because she *delivered* it to the Minnesota Secretary of State. But there is no corresponding reference to record evidence showing that the manner of *delivery* was by personal service. Rather, the majority opinion, without citing any precedent from this Court as support, suggests, first, that the method of delivery is immaterial because the term is not defined in SDCL 15-6-4(d), and second, that delivery by mail would be sufficient.

[¶32.] On the contrary, it is clear from our rules of civil procedure that mailing a document is not a "delivery" as the term is used in statutes governing service of summons and other pleadings. Our rules, particularly those in effect at the time of the attempted service here, state that "delivery" of the document to be served means "handing it to" or "leaving a copy" with the party or other designated person in charge. *See* SDCL 15-6-5(b) (2021); SDCL 15-6-4(1); *see also* SDCL 15-6-5(b)(3) (current version) (showing that service by "delivery" is distinct from service by first class mail or electronic mail). Thus, the majority opinion's statement that "Bialota should have attempted to deliver the Notice by mail as a means of personal service" has no support in the law. *See* Majority Opinion ¶ 23 n.6. In fact, it is directly contrary to the requirements in SDCL 10-25-5, as discussed further below.

[¶33.] The majority opinion nevertheless concludes that valid service of the Notice on the Minnesota Secretary of State occurred because the "Acknowledgment of Service of Process" shows that "the Notice was, in fact, delivered" and that

acknowledgement, along with Bialota's affidavit of completed service, satisfies the requirements for establishing proof of service under SDCL 15-6-4(g). Setting aside the fact that Bialota did not make this argument or rely on SDCL 15-6-4(g), it is clear that the requirements for proving *personal* service on the Minnesota Secretary of State have not been met. Under SDCL 15-6-4(g), the proof of service "must state the time, place, and *manner* of such service." (Emphasis added.) Importantly, a review of the acknowledgment from the Minnesota Secretary of State and Bialota's affidavit reveals only the time and place of such service, not the manner.

[¶34.] Fact of service does not overcome the statutory mandate that the proof of service must state the manner of service. And, contrary to the majority opinion's suggestion that there could be substantial compliance with SDCL 15-6-4(g), citing *Wagner v. Truesdell*, 1998 S.D. 9, ¶¶ 6–7, 574 N.W.2d 627, 629, this Court has not before said that substantial compliance with a *proof of service* provision is sufficient to find that personal service was in fact accomplished. Moreover, there is no support for concluding that the service of process acknowledgement issued by the Minnesota Secretary of State substantially complied with SDCL 15-6-4(g) because, as the majority opinion notes, there is no indication of manner of service.

[¶35.] The majority opinion deems this omission immaterial because "Lakota Lakes does not challenge the adequacy of the proof or discuss the significance of the acknowledgement." But why would Lakota Lakes make such a challenge or address the acknowledgement when Bialota has not argued that SDCL 15-6-4(g) applies or that she complied with this statute's mandates? By making this determination sua sponte, the majority opinion has not only failed to hold Bialota to her burden of

proving that she accomplished *personal service* of the Notice as required by South Dakota law, it has also deprived Lakota Lakes of the opportunity to respond to a theory that does not comport with our rules of civil procedure and the evidence of record in this case. In particular, even though the record contains no "affidavit of mailing," which is required (in addition to an admission of service) under the subsection of SDCL 15-6-4(g) that governs proof of service "in the case of mailing," the majority opinion simply ignores this requirement and presumes this was the manner of service.

[¶36.] In any event, we must be mindful of the fact that "[p]roper service of process is no mere technicality: that parties be notified of proceedings against them affecting their legal interests is a 'vital corollary' to due process and the right to be heard." *R.B.O. v. Priests of Sacred Heart*, 2011 S.D. 86, ¶ 9, 807 N.W.2d 808, 810 (quoting *Spade v. Branum*, 2002 S.D. 43, ¶ 7, 643 N.W.2d 765, 768). Service of process warns affected parties that a legal proceeding has commenced and that they should appear and respond. *See id.* With respect to tax deeds in particular, SDCL 10-25-5 mandates "personal service" upon the owner of record of real property, while other parties, such as "any other interested person," may be served by sending notice to the last known address of the person. Therefore, it is evident that the Legislature contemplated that owners of real property, or their registered agents, must receive personal service of the notice of intent to take tax deed, while parties with lesser interests could be served by mail. This is likely why neither party has argued that SDCL 15-6-4(i), which allows for service by mail in lieu of personal service, applies here.

[¶37.]    As noted by Lakota Lakes in its appellate brief, a previous version of SDCL 10-25-5 allowed for service upon a nonresident owner by publication and mailing, but this is no longer an option. The current version of this statute requires personal service on the record owner. *See Dahn v. Trownsell*, 1998 S.D. 36, ¶ 16, 576 N.W.2d 535, 539 (citing SDCL 10-25-5 (1991)); *see also* SDCL 15-6-4(d)(7) (stating that "[w]henever the manner of service of process is specified in any statute or rule relating to any action, remedy or special proceedings the manner of service so specified shall be followed").

[¶38.]    Because Bialota has not established that she personally served the Notice on the Minnesota Secretary of State as required by SDCL 10-25-5, she has failed to meet her burden of proof. Consequently, I dissent and would affirm the circuit court's grant of summary judgment to Lakota Lakes on this basis. Of final note, while Bialota filed a motion for summary judgment quieting title to the property in her name, she did not appeal the circuit court's denial of her motion. Therefore, as the majority opinion has directed, further proceedings are to be held on remand.

[¶39.]    DEVANEY, Justice, joins this writing.